## In re Armando A. Miranda, querellado.

Núm. 40.—*Sometido:* Julio 21, 1941. *Resuelto:* Julio 29, 1941.

*Armando A. Miranda, pro se* y *R. Díaz Collazo,* abogado del querellado; *R. A. Gómez, Fiscal del Tribunal Supremo,* abogado de El Pueblo.

El Juez Asociado Señor De Jesús emitió la opinión del tribunal.

El Procurador General de Puerto Rico, representado por el Fiscal de este tribunal, instó este procedimiento de *disbarment* contra el abogado Armando A. Miranda, imputándole la realización de ciertos actos constitutivos de depravación y conducta inmoral en el ejercicio de su profesión, y como consecuencia de dichos actos solicitó que el referido abogado fuera separado del ejercicio de la abogacía y del notariado y la eliminación de su nombre en el Registro de Abogados.

La prueba del fiscal podemos resumirla así:

Rufino Alicea Erazo era dueño de una finca rústica, de veintidós cuerdas de superficie, radicada en el barrio Cerro Gordo del término municipal de Bayamón, finca que fué vendida por Alicea Erazo a Francisco Nazario, quedando un precio aplazado a pagarse en distintos plazos garantizados todos con hipoteca sobre el inmueble vendido, estipulándose en la escritura un crédito adicional de $200 para costas y honorarios de abogado en caso de ejecución. No habiendo satisfecho Nazario a su vencimiento el segundo de los plazos, Alicea Erazo, acompañado de su hijo Eusebio Alicea, requirió los servicios del abogado Miranda para que esta-

bleciese procedimientos judiciales a fin de hacer efectivo el crédito hipotecario. Para gastos judiciales adelantó Alicea Erazo a Miranda en esa ocasión la cantidad de $24. Posteriormente volvió Alicea Erazo, entonces acompañado de su concubina Rosa Vázquez, donde Miranda, urgiéndole la más rápida solución del pleito. En una tercera ocasión volvió a visitarlo Rosa Vázquez, siempre con el mismo objeto, y además para llevarle una cantidad adicional que les había pedido para gastos del litigio.

Así las cosas, falleció Alicea Erazo el 6 de enero de 1932 y seis días después Rosa Vázquez y sus cuatro hijos Eusebio, Miguel, Romualdo y Hermenegilda Alicea Vázquez tuvieron una entrevista con Miranda en su residencia en Bayamón, notificándole el fallecimiento de Alicea Erazo e insistiendo una vez más en la necesidad de que activase el asunto. Les impuso el abogado de la necesidad de tramitar una declaratoria de herederos para poder continuar los procedimientos a nombre de ellos y que ese nuevo trabajo les costaría $75, replicando ellos que no disponían de dinero, pero que él podía adelantar los gastos y ellos le satisfarían todo, una vez que hiciesen efectivo el crédito hipotecario, contestando Miranda que él no tenía dinero. Algún tiempo después volvió Eusebio Alicea donde el abogado, inquiriendo si se había tramitado la declaratoria de herederos. En esa ocasión, según declaró dicho testigo, Miranda le indicó que él no conocía tales herederos.

Veamos qué gestiones había practicado el Sr. Miranda durante todo ese tiempo en relación con el pleito que se le encomendara. Allá para el 22 de octubre de 1931, radicó en la Corte de Distrito de Bayamón el pleito núm. 430, a nombre de Rufino Alicea Erazo contra Francisco Nazario y su esposa Rafaela Cardona, en cobro de dinero, por la cantidad de $700 de principal a que había quedado reducido el crédito hipotecario, más $200 estipulados para costas y honorarios de abogado. La parte demandada presentó una moción eli-

minatoria que fué declarada con lugar, enmendándose la demanda el 7 de enero de 1932. No habiendo interpuesto los demandados alegación alguna contra la demanda enmendada, el 19 de enero de 1932, solicitó y obtuvo la anotación de rebeldía.

Enterado para esa fecha del fallecimiento de su cliente, suspendió Miranda sus gestiones en el caso núm. 430 de la corte de distrito, pero unos cinco meses después instó en la Corte Municipal de Bayamón el pleito núm. 6601 seguido por él como demandante, contra John Doe y Richard Roe, o sea la sucesión desconocida de su cliente Rufino Alicea Erazo, teniendo por objeto dicha acción el cobro de sus honorarios en el pleito 430, los cuales estimó en la cantidad de $310.

En el nuevo pleito y para asegurar la efectividad de la sentencia, embargó el crédito hipotecario objeto del caso núm. 430, seguido en la Corte de Distrito de Bayamón. Se expidió el emplazamiento y para diligenciarlo se valió de Jorge Salas, que hasta poco antes de esa fecha había trabajado en la oficina del querellado, preparando Miranda, de su puño y letra, el diligenciamiento que debería jurar Salas, en los siguientes términos:

"Yo, Jorge Salas, juro solemnemente: que soy de veinte años de edad y que no tengo interés ni soy parte en este asunto; que recibí el presente emplazamiento a las diez de la mañana del día 11 de junio de 1932, y que no notifiqué el mismo personalmente a John Doe y Richard Roe, o sea a la sucesión desconocida de Rufino Alicea Erazo, por ser personas desconocidas."

Es muy significativo que este diligenciamiento preparado por un abogado inteligente nada diga con respecto a las gestiones que practicara el diligenciante, quien declaró que en ningún momento salió de la oficina del Sr. Miranda para hacer tales gestiones, firmándolo allí mismo.

A base de un emplazamiento así diligenciado, la Corte Municipal de Bayamón ordenó que se publicasen edictos para notificar a los demandados, y no compareciendo éstos dentro

del término legal, se anotó su rebeldía, dictándose sentencia contra ellos el 4 de octubre de 1932, condenándoles a pagar al demandante la cantidad de $310 de honorarios, más las costas, por concepto de las cuales reclamó el Sr. Miranda la cantidad de $27.89.

En ejecución de esta sentencia, el 28 de enero de 1933 fué sacado a subasta el crédito hipotecario de $700, y adjudicado al propio Sr. Miranda por la suma de $75 como abono a la misma.

En ese estado se hallaban ambos pleitos cuando, enterados los hijos de Rufino Alicea Erazo por el deudor Nazario de que el crédito pertenecía entonces al Sr. Miranda, requirieron los servicios profesionales del Lic. José S. Alegría, quien, el 16 de marzo de 1933, radicó en la Corte Municipal de Bayamón, en representación de la sucesión Alicea, un escrito que tituló "Moción para dejar sin efecto la rebeldía y sentencia y abrir el caso para continuar los procedimientos". A esta moción acompañó el Sr. Alegría escritos de excepciones previas y contestación, y lo que es más importante, una copia certificada de la resolución de 9 de marzo de 1933 dictada por la Corte de Distrito de San Juan, por la cual fueron declarados únicos y universales herederos de Rufino Alicea sus hijos naturales reconocidos anteriormente nombrados.

Lejos de allanarse a las pretensiones de los herederos de Alicea a que se les diese una oportunidad de ser oídos y defenderse, y a pesar de conocer la copia certificada de la resolución declarándoles herederos de su padre, se opuso Miranda a la indicada moción, por escrito de 25 de marzo de 1933.

La corte municipal, en vista de la oposición del Sr. Miranda, declaró sin lugar la moción de los demandados y dejó subsistente la sentencia dictada contra ellos.

Nada más se hizo en el caso núm. 6601 de la corte municipal, hasta que el 18 de noviembre de 1933 los abogados Sres. Félix Ochoteco Jr. y José S. Alegría, en representa-

ción de la sucesión Alicea, radicaron una "Moción sobre nulidad de sentencia", cuya vista fué señalada para el 24 del mismo mes. En vez de aprovechar el Sr. Miranda esta nueva oportunidad que se le presentaba para rectificar, si posible fuere, sus actuaciones anteriores, se opuso a dicha moción, alegando que la cuestión levantada en la misma había sido resuelta por la corte el 23 de mayo de 1933, al declarar sin lugar la moción sobre apertura de rebeldía, etc. El 2 de febrero de 1934, la corte municipal declaró también sin lugar esta segunda tentativa de los demandados para que se les diese una oportunidad de ser oídos.

Para revisar esta resolución de la corte municipal los abogados de la sucesión Alicea presentaron una solicitud de *certiorari* en la Corte de Distrito de Bayamón y finalmente dicha corte de distrito, por sentencia de 28 de abril de 1934, anuló la que había dictado la corte municipal contra la sucesión Alicea en el pleito núm. 6601. No satisfecho todavía el Sr. Miranda apeló de la sentencia de la Corte de Distrito de Bayamón en el caso de certiorari, para ante este Tribunal Supremo, siendo aquí confirmado en 10 de noviembre de 1937. 52 D.P.R. 257.

Hemos hecho una exposición de la prueba en apoyo de la solicitud de disbarment. Expongamos ahora la que en oposición a la misma adujo el querellado.

Sostuvo el Sr. Miranda que Rufino Alicea Erazo, en las distintas ocasiones que se entrevistó con él, vino solo; que no sabía que Alicea tuviera tales hijos; que al enterarse de su fallecimiento trató de descubrir si había dejado herederos y al efecto preguntó a distintas personas del pueblo de Bayamón, entre ellas a su hermano Francisco Miranda, que por los cargos que ha ocupado y por haber vivido siempre en Bayamón conoce un gran número de sus habitantes, y nadie pudo informarle que Alicea tuviera herederos; que todos lo conocían como un mendigo y no sabían que tuviese familia; que no continuó el pleito que le fué encomendado por-

que al fallecer Alicea cesaban sus facultades para representarlo; que los hechos que han dado lugar a este procedimiento de disbarment fueron antes investigados por un comité del Colegio de Abogados, presidido por el Lic. Martín Travieso, hoy Juez Asociado de este tribunal, y que ese comité rindió un extenso informe adverso al querellado, imponiéndosele como castigo una reprimenda en presencia de otros compañeros; que con motivo de estos hechos, ciertos periódicos y revistas locales por algún tiempo estuvieron atacándolo, y que fué tal el sufrimiento que la reprimenda y estas publicaciones le produjeron, que se sintió enfermo y salió de Puerto Rico por algún tiempo, para lo cual tuvo que enajenar la única propiedad que poseía; que en su ausencia su esposa e hijos pasaron hambre, porque sólo dependían de las cuentas que su taquígrafa pudiese cobrar; que esta situación trajo por consecuencia que su esposa tuviera que refugiarse con sus hijos en la casa de sus padres y finalmente solicitase el divorcio, destruyéndose así el hogar conyugal; que recientemente su nombre estaba siendo considerado para un importante cargo público y hubo de pedir que no lo considerasen por haberse promovido este procedimiento.

La prueba del Fiscal nos ha merecido entero crédito; pero a los efectos del argumento solamente, asumamos que el Sr. Miranda no supiera que Rufino Alicea tuviera herederos; asumamos también que los testimonios de éstos sobre sus distintas entrevistas con él fueran falsos; pasemos por alto su actuación al preparar el diligenciamiento del emplazamiento que juró Salas, donde se omitió el hecho esencial de exponer que se practicaran gestiones para localizar a los demandados, omisión ésta que entrañaba una sorpresa al tribunal; hagamos caso omiso de lo irrazonable que resulta cobrar a esta sucesión la cantidad de $310 por honorarios de un pleito en cobro de $700, que seguramente constituía el único patrimonio de los demandados; concedamos además que no se le ocurriera al Sr. Miranda investigar la existen-

cia de estos herederos en el barrio Cerro Gordo, que según la prueba dista de siete a diez kilómetros del pueblo de Bayamón, y donde fácilmente hubiera obtenido la necesaria información; ¿qué explicación racional puede dar el Sr. Miranda de su conducta al insistir en dichas dos ocasiones en que prevaleciese su sentencia contra la sucesión Alicea Erazo después de presentársele la copia certificada de la resolución por la que se declaró a los hermanos Alicea Vázquez únicos y universales herederos de su padre Rufino Alicea Erazo?

Conociendo ya por prueba indubitada la existencia de estos herederos, practicó gestiones para inscribir a su favor el crédito hipotecario de $700 que le había sido adjudicado por $75, no en saldo de su reclamación, sino como abono a la sentencia de $310 que contra ellos había obtenido, lo que significaba que todavía estos herederos, a pesar de perder todo cuanto tenían a cambio de recibir nada, quedarían adeudándole la cantidad de $235.

Parece conveniente consignar aquí que aunque no resulta expresamente de los autos que estos herederos finalmente recobraran su propiedad, sin embargo puede inferirse que han debido lograrlo, puesto que conforme declaró el Lic. Ochoteco, recibió $150 a cuenta de sus honorarios.

A nuestro juicio, las alegaciones de la querella han sido probadas más allá de duda razonable y siendo los actos realizados por el abogado Armando A. Miranda constitutivos de conducta inmoral en el desempeño de sus deberes profesionales, *procede separarlo del ejercicio de la abogacía y del notariado y eliminar su nombre del Registro de Abogados por el término de un año a partir de la fecha de la sentencia que en este caso se dictará.*

El Juez Asociado Sr. Travieso no intervino.